Opinion delivered May 1, 1886.

[No. 3926.]

H. YOAKUM *v.* THE STATE.

1. DRIVING STOCK FROM ACCUSTOMED RANGE—TERM DEFINED.—The offense of unlawfully, wilfully, and fraudulently taking into possession and driving from its accustomed range the animal of another, without the consent of the owner, as that offense is defined by Article 749 of the Penal Code, is limited and qualified by the word "wilfully," which, in legal parlance, means with evil intent, or that the act was done without reasonable ground to believe that the same was lawful.

2. SAME—FACT CASE.—See the statement of the case for evidence *held* insufficient to support a conviction for wilfully driving stock from its accustomed range.

APPEAL from the District Court of Travis. Tried below before the Hon. A. S. Walker,

The first count in the indictment in this case charged the appellant with the unlawful, wilful, and fraudulent driving of a certain head of cattle, the property of Larry Hughes, from its accustomed range, without the consent of the owner. The second count charged him with the theft of the animal. Both counts alleged the venue in Travis county, Texas. The first count charges the twenty-fifth day of July, 1885, as the date of the offense therein charged, and the second count charges the twenty-fifth day of June, 1885, as the date of the theft. The verdict found the defendant "guilty of a misdemeanor," and assessed his punishment at a fine of fifty dollars.

Larry Hughes, the first witness for the State, testified that he lived in Travis county, Texas, south of the Colorado river. On or about the day alleged in the indictment the witness lost a steer calf, twelve or thirteen months old. Its accustomed range for the eight or nine months next preceding its disappearance was on the right bank of the Colorado river. Witness had owned that animal since October, 1884. The original brand was a plain LH with an over bar. That brand, when two or three weeks old, was changed somewhat. The L was run into the bar, and the H was changed to resemble an R more than an H. Witness once offered to sell the calf to Billy Sheehan. No one had the witness's consent to take, handle, or sell the calf. Witness never sold that calf. He recovered the hide from Mr. Robinson's hide house, on Shoal creek. The witness got the animal from the defendant's brother. He offered to trade it to the defendant for a heifer, about five months before the disappearance of the animal. Witness did not know where the defendant then lived, but thought he lived with his brother. Witness did not know that defendant had ever seen the calf at his, witness's, place, but defendant was often at witness's place, while he, witness, owned the calf. Witness could not say that the animal was about home on the occasion of any visit of defendant. Defendant had not been at witness's house since the winter of 1884–1885.

Cross-examined, the witness said that after he missed the animal he spoke to defendant about it. Defendant said that he took the brand on the calf to be Mr. Robinson's, and that he bought it from Robinson before he handled it.

Re-examined, witness said that the conversation with defendant last mentioned occurred after he, witness, found the hide. The flesh was still in defendant's meat market, unsold, when this interview was had. Witness told the defendant that he had

killed his calf. Defendant replied: "No, I reckon not." Witness replied, "Yes, you have," and spoke of finding the hide. Witness and defendant then went to Robinson. Robinson said that he had calves branded with square—R connected, and that defendant had mistaken the calf for one of his, Robinson's.

Hide and animal inspector Warren testified that defendant sent for him in June to inspect an animal he had killed. The witness examined the hide and found it branded LH, with an over bar. The brand was blotched. A novice might have taken the brand for square—R connected, but an expert could hardly do it. Defendant told witness that he got the animal from a man across the river. After the trouble, he told witness that he got it from Robinson. Hughes's brand was LH, with an over bar. Robinson's brand was a square —R, connected. The brand on the hide was a blotched LH, with an over bar. The State closed.

Lem Robinson testified, for the defense, that he owned a calf in the square—R brand, running across the river. Defendant proposed to purchase that animal, but witness at first refused to sell it. He finally agreed to let defendant have it, if he would take it up himself and pay for it. Defendant afterwards paid witness for the calf. Mr. Hughes afterwards came to witness about the calf defendant had killed. Witness told him that a mistake had occurred. Hughes then executed a bill of sale to defendant, and defendant paid Hughes in witness's presence. Defendant also paid the witness for the calf. This witness, on cross-examination, said that he thought the payment to him was made by defendant after the payment to Hughes. Witness authorized Hughes to kill the calf in his brand.

Mr. Sale testified, for the defense, that he was a butcher in the employ of the defendant. He butchered the calf described in the indictment. Defendant did not tell witness where he got the calf, but witness understood him to say he got it from "an old man" across the river, and witness so told Mr. Warren.

E. P. Robinson testified, for the defense, that he bought the hide from defendant. He bought it as a hide branded square—R connected. He took such to be the brand. Subsequent close examination disclosed the brand to be LH, with an upper bar, the bar very close to the letters.

E. P. Haigler, butcher, testified, for the defense, that he examined the hide. The brand was blotched, and could be readily taken to be a square—R, connected.

The motion for new trial raised the questions discussed in the opinion.

*Walton, Hill & Walton,* for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE.  Appellant was tried and convicted upon the first count in the indictment; which charged him with having unlawfully, wilfully, and fraudulently taken into his possession the animal mentioned in the indictment, and driven the same from its accustomed range, without the consent of the owner, the prosecution being based on Article 749 of the Penal Code.

The offense, as denounced by the statute, is limited and qualified by the word "wilfully," which, in legal parlance, means with evil intent, or that the act was done without reasonable ground to believe that the same was lawful. (Owens v. The State, 19 Texas Ct. App., 242; and authorities cited.)

When the evidence, as shown by the statement of facts, is subjected to the test of the above definition of the word "wilful," as used in the statute, we are of the opinion that it is wholly insufficient to support the judgment of conviction rendered in the lower court.  On the contrary, it shows that appellant thought he had the right to take the animal in question, and, in our opinion, he had good reasons, as shown by the evidence, upon which to base his belief.

In view of the evidence disclosed, we do not think this conviction should be permitted to stand as a precedent; wherefore the judgment is reversed and the cause is remanded.

*Reversed and remanded.*